```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DEVIN C. BOTTOM,                                              :
                    Plaintiff,                                :
                                                              :
v.                                                            :      **OPINION AND ORDER**
                                                              :
WARDEN M. CAPRA, DEPUTY                                       :      15 CV 4615 (VB)
SUPERINTENDENT OF SECURITY M.                                 :
ROYCE, SERGEANT R. MOSS,                                      :
CORRECTIONAL OFFICER C. JAMES,                                :
CORRECTIONAL OFFICER A. BORO,                                 :
                    Defendants.                               :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Devin C. Bottom, proceeding pro se and in forma pauperis, brings claims pursuant to 42 U.S.C. § 1983, alleging defendants Capra, Royce, Moss, James, and Boro failed to protect him from being assaulted by fellow inmates while incarcerated at Sing Sing Correctional Facility ("Sing Sing"), in violation of the Eighth and Fourteenth Amendments.

Now pending is defendants' motion to dismiss the complaint for failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 (the "PLRA") and for failure to state a claim.  (Doc. #20).

For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in plaintiff's favor.  The following alleged facts are taken from the complaint and its attachments (Doc. #2), and plaintiff's opposition to defendants' motion.  (Doc. #26).  See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

Plaintiff is an inmate at Sing Sing. During the relevant period, he resided in Housing Block B.

Sing Sing is operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). Defendants occupy the following positions at Sing Sing: Capra is the Superintendent; Royce is the Deputy Superintendent of Security ("D.S.S."); Moss is a sergeant; and James and Boro are corrections officers.

Plaintiff claims he was assaulted by fellow inmates twice, and Sing Sing staff deliberately failed to protect him.

I.    Assault on September 14, 2014

The first assault allegedly took place on September 14, 2014, at 3:15 p.m. Plaintiff was in the recreation yard of Housing Block B when two unnamed inmates cut him on the left ear and neck with a sharp object. Plaintiff claims these inmates were affiliated with the Bloods gang.

C.O. James and Sgt. Moss responded to the incident and took plaintiff to the infirmary. There, plaintiff told James and Moss the two reasons he believed he had been assaulted: (i) unnamed corrections officers in Housing Block B had spread a false rumor that plaintiff was in jail for child molestation; and (ii) the Bloods gang had put a bounty on plaintiff's head because plaintiff "had exposed a high ranking Blood member and other gang members for being undercover (down low) homosexuals" while plaintiff was incarcerated at a different correctional facility in 2013. (Compl. at 5).

Plaintiff alleges Sgt. Moss told plaintiff he would write up the incident not as an attack but as a "two-inmate fight" because he was "not up to doing any extra paperwork." (Compl. at 5-6). Plaintiff then told Sgt. Moss and C.O. James his life would be in danger if they sent plaintiff back to his cell in Housing Block B, because the inmate who had cut plaintiff lived in

the same gallery, as did other Bloods members. Plaintiff also told Moss and James the corrections officers who had spread the rumors about plaintiff being a child molester worked in Housing Block B. Plaintiff told Moss and James there would be more plots to attack plaintiff if he returned to Housing Block B, and asked to be transferred to Housing Block A instead.

According to the complaint, Sgt. Moss told plaintiff he would explain the situation to Deputy Superintendent Royce. Moss then left. When Moss returned, he told plaintiff that Royce had refused to move plaintiff from Housing Block B, and had ordered Moss to return plaintiff to the same cell. Allegedly, Moss also told plaintiff that Royce told Moss to write up the incident as a two-inmate fight, rather than an attack.

Plaintiff claims he asked Sgt. Moss to place him in protective custody. Moss allegedly responded, "[T]he only way I will allow you P.C.[,] Bottom, is after I send you to the outside hospital for breaking your ass the fuck up, and trust me, you don't want that because I am not the one to fuck with. So you['re] going back to your same cell on keeplock confinement." (Compl. at 7). Plaintiff was returned to his cell.

According to plaintiff, C.O. James ultimately wrote up the incident report as a two-inmate fight based on Moss's instructions.

On the night of September 14, 2014, plaintiff alleges he wrote a letter to Superintendent Capra recounting the day's events, including the reactions of Royce, Moss, and James, and saying his life was in danger in Housing Block B. Superintendent Capra never responded.

II.     Assault on September 17, 2014

Plaintiff claims he was assaulted a second time on September 17, 2014, three days after the first assault, by "inmates of general population." (Compl. at 8). According to plaintiff, this assault was a "continuation" of the assault three days earlier. (Id.).

C.O. Boro, an officer in Housing Block B, came to plaintiff's cell and told plaintiff to "get ready for a disciplinary hearing, and that the disciplinary escort officer will be at the plaintiff's cell within ten to fifteen minutes, to escort him to the disciplinary office." (Compl. at 8). Plaintiff alleges Boro then "intentionally unlocked and opened the plaintiff's cell door, without any escort officer being present at the plaintiff's cell." (Id.). Plaintiff claims Boro then "walk[ed] away smiling." (Id.). Plaintiff claims that when Boro subsequently testified at plaintiff's disciplinary hearing, he said he knew it was a breach of prison procedure to leave the cell open and unattended. (Id. at "Exhibits of Incident etc. In Support of Complaint," Doc. #2-1 at 34).

Shortly thereafter, and before a corrections officer arrived, two inmates ran into plaintiff's cell and assaulted him with a razor. When the two inmates ran away, plaintiff got up to chase them but was assaulted by a third inmate who ran into plaintiff's cell.

Plaintiff was hospitalized. He suffered broken cheek bones, a broken nose and collar bone, and a ten-and-a-half inch gash to the left side of his face. These injuries required a surgical plate with screws, nineteen staples, and twenty-nine stitches.

III.    Administrative Exhaustion

In his complaint, plaintiff claims he filed grievance reports for both the September 14 and September 17 incidents, but the Inmate Grievance Supervisor refused to process either grievance. Plaintiff claims he appealed these decisions to the Superintendent, who refused to respond, and then appealed to the Central Office Review Committee.

The Complaint attaches plaintiff's grievance reports for both the September 14 incident (Compl. Ex. 1-A) and the September 17 incident (Id. Ex. 2-B[1]). Both grievance reports are sworn on October 16, 2014, and both check a box indicating they were not filed within 21 days of the subject incidents. However, the report regarding the September 14 incident gives the following explanation:

> I was placed on bed-confinement, on (E.M.W.) Emergency Medical Watch after returning from the outside hospital on September 17, 2014. Suffering from se[vere], but not life-threatening injuries, including waiting and after going s[u]rgery for my sustained injuries.

(Id. Ex. 1-A at 1). Though only partially legible, the report regarding the September 17 incident appears to give a similar explanation.

IV.   Procedural History

The complaint brings claims under the Eighth Amendment for "failing to protect the plaintiff from crue[l] and unusual punishment" and "[in]adequate medical care"; under the Due Process Clause of the Fifth and Fourteenth Amendments for unspecified actions; under the Equal Protection Clause of the Fourteenth Amendment, and under the First, Sixth, and Fourteenth Amendments for "access to the Courts – law libraries and legal assistance." (Compl. at 4).

Defendants moved to dismiss, on the grounds that (i) plaintiff failed to exhaust his administrative remedies before filing suit; and (ii) the complaint fails to state a claim.

Plaintiff's opposition withdraws his claims under the First, Fifth, and Sixth Amendments, and his claims under the Fourteenth Amendment except insofar as "defendants spread[]

---

[1]   The grievance report for the September 17 incident is partially illegible because, apparently due to a photocopying or scanning issue, the writing has faded. However, it appears from the parts that are legible that both grievances give substantially the same narrative of both incidents, which is substantively the same narrative in the complaint.

confidential information about plaintiff's 1996 conviction to other inmates throughout the general population, as if plaintiff was currently serving prison time for." (Opp. at 11).

Therefore, the Court construes plaintiff's complaint as bringing claims against all defendants for (i) failing to protect plaintiff from being assaulted by inmates on both September 14 and September 17, 2014, in violation of the Eighth Amendment; (ii) inadequate medical care following the two assaults; and (iii) violation of plaintiff's Due Process rights under the Fourteenth Amendment for defamation.

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.  Exhaustion

First, defendants argue plaintiff's failure to file a grievance within twenty-one days of either incident warrants dismissal.

The Court disagrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Section 1997e(a) requires proper exhaustion—that is, using all steps that the agency holds out, and doing so properly." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)). In New York, the applicable local rules are set forth in the Inmate Grievance Procedure. See 7 N.Y.C.R.R. § 701. An inmate must initiate the

grievance procedure within twenty-one days of the alleged incident by filing a written grievance complaint with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. § 701.5(a). The IGRC has sixteen calendar days after receipt of the grievance to resolve the matter informally. 7 N.Y.C.R.R. § 701.5(b). Next, the inmate can appeal from the IGRC determination to the superintendent of his or her facility. 7 N.Y.C.R.R. § 701.5(c). Finally, an inmate can appeal from the superintendent's determination to the Central Office Review Committee ("CORC"), and the CORC must decide the appeal within thirty calendar days from the date the appeal is filed. 7 N.Y.C.R.R. § 701.5(d).

Recently, in Ross v. Blake, the Supreme Court clarified the meaning of the statutory language, "such administrative remedies as are available." 136 S. Ct. 1850, 1859 (2016). Because an inmate is only required to exhaust "available" remedies, the exhaustion requirement does not apply if the remedy is not available. Id. The Supreme Court listed three scenarios in which an administrative remedy, though it exists formally, is functionally unavailable: (i) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief"; (ii) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Correction Officer Priatno, _ F.3d _, 2016 WL

3729383, at *3 (2d Cir. 2016).[2] Therefore, "[d]ismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evident on the face of the complaint." Pratt v. City of New York, 929 F. Supp. 2d 314, 318 (S.D.N.Y. 2013).

Here, although it is clear on the face of the complaint plaintiff did not file within twenty-one days, it is not clear the administrative remedy was "available" within the meaning of Ross v. Blake. Liberally construing the grievance reports attached to plaintiff's complaint, plaintiff claims he missed the grievance deadline because his placement on "Bed Confinement" and "Emergency Medical Watch" by prison officials rendered him unable to file a grievance. (Compl. Ex. 1-A). This leaves open the possibility that the administrative remedy was unavailable.[3] See also Walker v. Vargas, 2013 WL 4792765 at *5-6 (S.D.N.Y. Aug. 26, 2013) (denying motion to dismiss when the complaint left open "the [p]ossibility that the Court [s]hould [e]xcuse the [p]laintiff's [f]ailure to [e]xhaust"[4]).

Discovery may show prison employees did not prevent plaintiff from filing a grievance for the duration of his hospital stay, bed confinement, and emergency medical watch, or otherwise render the grievance process unavailable. At this stage, however, dismissal on exhaustion grounds is unwarranted.

---

[2] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3] Contrary to defendants' suggestion, the Court owes no deference to DOCCS's rejection of plaintiff's explanation for his untimely filing. (See Defs.' Br. at 6 ("DOCCS rejected that explanation as insufficient to excuse Plaintiff's non-compliance, a determination that was well within its purview to make.")). It would be incongruous with the Supreme Court's ruling in Ross v. Blake—which envisions prison officials rendering ostensibly available remedies unavailable through obstruction and obfuscation—to assume as a matter of law that DOCCS correctly and honestly determined plaintiff could have filed a grievance report earlier than he did.

[4] Before Ross v. Blake, the Second Circuit analyzed the exhaustion defense in terms of whether the requirement was "excused," rather than whether the administrative remedy was "available." See, e.g., Hemphill v. New York, 380 F.3d 680, 685-86 (2d Cir. 2004).

III.   Failure to Protect

Alternatively, defendants move to dismiss because plaintiff has failed to state a claim against any defendant under the Eighth or Fourteenth Amendment.

The Court agrees with respect to the September 14 incident, but disagrees with respect to the September 17 incident.

The Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). So-called "failure to protect" claims have both an objective and a subjective component. The objective component requires a plaintiff to "demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component requires the defendant prison official to have knowledge of that risk and yet "fail[] to take reasonable measures to abate the harm." Id. This Eighth Amendment right is implicated when a prison official fails to prevent an inmate from being attacked by another, despite knowing the inmate was at risk. See id.

As with any Section 1983 claim, plaintiff must allege defendants' personal involvement in the claimed violation of his Eighth Amendment rights. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). To do so, plaintiff must allege defendants (i) participated directly in the alleged constitutional violation; (ii) were made aware of the wrongs and failed to remedy them; (iii) created or allowed a policy or custom under which unconstitutional practices occurred; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v)

exhibited deliberate indifference to his rights by failing to act on information indicating unconstitutional acts were occurring.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[5]

The complaint brings two separate claims against each defendant, for the assault on September 14, 2014, and for the assault on September 17, 2014.  The Court will analyze the claims pertaining to each assault in turn.

    A.    Assault on September 14

Plaintiff's claim against all defendants with respect to the September 14 assault fails because plaintiff has alleged no facts suggesting any defendant had knowledge plaintiff was at risk to be assaulted.  Indeed, plaintiff claims he first told Sgt. Moss and C.O. James he was in danger after he was assaulted on September 14.  Likewise, plaintiff claims he wrote the letter to Superintendent Capra after the September 14 assault.  Plaintiff does not implicate C.O. Boro in this incident at all.

Because, as alleged, defendants were unaware plaintiff was in danger of being assaulted on September 14, plaintiff's claims against all defendants fail the subjective component required to prove an Eighth Amendment claim.  See Parris v. N.Y. State Dep't Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("Because the plaintiff has alleged no facts suggesting that any of the defendants knew of a particular risk to the plaintiff's safety, the plaintiff has failed to state a claim that any of the defendants was deliberately indifferent in failing to protect him from the surprise attack.").

---

[5] The Second Circuit has noted, without deciding, that the five types of liability articulated in Colon v. Coughlin may not all have survived the Supreme Court's holding in Ashcroft v. Iqbal.  See Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012).  The Court need not weigh in on this issue because, as explained below, with respect to each claim, each defendant either participated directly or not at all.

Accordingly, plaintiff's claim is dismissed insofar as it alleges defendants violated plaintiff's constitutional rights by failing to protect him from the September 14, 2014, assault.

B.  Assault on September 17

Plaintiff has, however, stated a claim against each defendant for failure to protect him from assault on September 17, 2014. The Court discusses each defendant in turn.

1.  D.S.S. Royce, Sgt. Moss, and C.O. James

Plaintiff has met the objective component as to D.S.S. Royce, Sgt. Moss, and C.O. James. As alleged, after the September 14 assault, these defendants continued to house plaintiff in Housing Block B from September 14-17, where several inmates and corrections officers allegedly meant to do him harm. Ultimately, according to plaintiff, those inmates and corrections officers were successful in harming him on September 17. This situation constitutes a "condition[] posing a substantial risk of serious harm." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d at 620.

Plaintiff has also met the subjective component as to these three defendants. Accepting the allegations in the complaint as true, defendants Royce, Moss, and James learned on September 14, 2014, that plaintiff was in danger of being attacked again and seriously injured if he was returned to Housing Block B. Moss and James allegedly knew this because, after plaintiff was attacked on September 14, plaintiff told them Housing Block B was unsafe for him, both because of the rumors that he was a child molester and because of his conflict with gang members housed in the same gallery as plaintiff. Moss and James also allegedly knew of the danger because they responded to the September 14 assault immediately after it happened, and could see his injuries. Royce allegedly knew of the danger because Moss relayed to Royce what plaintiff told Moss and James. Yet, according to plaintiff, both Moss and Royce refused

plaintiff's requests to remove him from Housing Block B or place him in protective custody. Moreover, according to plaintiff, Moss and James wrote up the incident report falsely as a two-inmate fight, downplaying the danger of plaintiff's situation, because Moss was unwilling to do the paperwork necessary to write up the assault truthfully. As a result, according to plaintiff, he was assaulted again three days later. Such allegations are sufficient to state a claim that Royce, Moss, and James knew about the danger to plaintiff but failed to abate it.

Defendants make several arguments to the contrary. None has merit.

First, defendants argue plaintiff's description of the threats was not specific enough. This is unpersuasive. In Hayes v. N.Y.C. Department of Corrections, for example, plaintiff's description of the threats was specific enough when he told defendants he was in danger while housed in the House of Detention for Men, an area of Rikers Island housing approximately 1,200 inmates, because of his conflict with inmate Gary Tillman and "his whole crew." 84 F.3d at 618. Besides Tillman, plaintiff in Hayes had not identified any of his eventual attackers by name, and yet the plaintiff's inability to do so was not "outcome determinative." Id. at 621.

So too here. Plaintiff identified Housing Block B as a place it was unsafe for him to remain because he felt threatened by the members of the Bloods gang housed there, as well as the corrections officers who worked there. Thus, plaintiff was about as specific here as the plaintiff in Hayes. As in Hayes, plaintiff's inability to name his attackers is not fatal to his claim.

Next, defendants argue plaintiff has not alleged any connection between the September 14 and September 17 assaults. This is incorrect. Plaintiff described the September 17 attack as a "continuation" of the assault on September 14, and a liberal reading of his complaint shows plaintiff alleges both attacks to be part of the same ongoing conflict between plaintiff and inmates and officers in his housing block. (Compl. at 8).

13

Finally, defendants argue C.O. James was not personally involved in the violation of plaintiff's rights because plaintiff does not allege James was involved in the decision not to move plaintiff from Housing Block B, or that James was aware of plaintiff's request for protective custody.

The Court disagrees.  According to the complaint, plaintiff told C.O. James about all of the same dangers about which he told Sgt. Moss and D.S.S. Royce.  Moreover, James allegedly heard Sgt. Moss refuse to report the September 14 assault truthfully because Moss did not want to do "extra paperwork" (Compl. at 5-6), and James personally drafted the allegedly untruthful incident report to downplay the danger to plaintiff.  These allegations, if true, state a claim that James knowingly failed to protect plaintiff.

Accordingly, the Court will not dismiss the claims against Royce, Moss, or James for failure to protect plaintiff from the September 17 assault.

2. <u>Superintendent Capra</u>

Plaintiff has met the objective component as to Superintendent Capra, because the dangerous condition from which plaintiff allegedly needed protection is the same one discussed above for defendants Royce, Moss, and James.

Plaintiff has also met the subjective component.  According to the complaint, plaintiff's letter to Superintendent Capra conveyed essentially the same information known to Royce, Moss, and James when those defendants decided not to move plaintiff from Housing Block B.  Therefore, Capra's alleged decision not to move plaintiff from Housing Block B or put plaintiff in protective custody was made with the same knowledge of plaintiff's dangerous situation as were the decisions made by Royce, Moss, and James.

Defendants argue the claim against Superintendent Capra fails because "[t]he lack of an immediate response to a single letter describing unspecified threats to a plaintiff's safety does not constitute deliberate indifference." (Defs.' Br. at 9 (citing Velez v. Kulhmann, 2003 WL 22004899, at *4-5 (S.D.N.Y. Aug. 22, 2003)). Relatedly, defendants argue Capra's failure to respond to a single letter is insufficient to show he was personally involved in the violation of plaintiff's constitutional rights.

The Court disagrees.

First, as explained above, the letter did not describe "unspecified threats." Plaintiff's letter allegedly told Superintendent Capra essentially the same information as plaintiff had told Royce, Moss, and James. The Court has already explained why plaintiff's explanation to these defendants was specific enough to apprise Royce, Moss, and James of plaintiff's dangerous situation. Therefore, the same information was specific enough to apprise Capra of the danger as well.

Second, to the extent defendants argue Superintendent Capra cannot be held liable for "[t]he lack of an immediate response," the Court notes that more than two days passed between plaintiff's request to be moved from Housing Block B and the September 17 assault. The Court cannot find as a matter of law at this stage that Capra was unable to respond in that time frame.

Finally, to the extent defendants argue the superintendent of a prison is not personally involved in a constitutional violation if he or she merely fails to respond to a prisoner's letter, the Court is unpersuaded in this particular case.

"[A] number of courts [in this district] have held that 'it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.'"

15

Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (quoting Greenwaldt v. Coughlin, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)) (collecting cases).  Put another way, these courts have held "an allegation that a prison official received correspondence and did not act on it does not state a claim for personal involvement under [S]ection 1983."  See, e.g., Johnson v. Wright, 234 F. Supp. 2d at 364.

In the Court's view, however, this rule—that a prison official who merely ignores an inmate's letter is per se not personally involved in the constitutional violation—sweeps too broadly, and does not to apply to the facts of this case.

First, the Court is unaware of a Second Circuit case to articulate such a broad rule, and the cases courts in this district cite in support of the rule do not mandate it.  For example, in Sealey v. Giltner, the Second Circuit held the Commissioner of DOCCS was not personally involved in a violation because he referred one of plaintiff's letters to the appropriate officer, and responded to the second.  116 F.3d 47, 51 (2d Cir. 1997).  Likewise, in Wright v. Smith, the Commissioner of DOCCS was not personally involved because plaintiff's letter did not include information about the alleged constitutional violation.  21 F.3d 496, 501 (2d Cir. 1994).  Neither case establishes a per se rule.

Second, such a broad rule is particularly ill-suited to a failure to protect claim, in which a prison official's allegedly deliberate inaction in response to an inmate's request for help forms the very basis of the claim.  See Haywood v. Woods, 2007 WL 1834641, at *10 (N.D.N.Y. June 25, 2007) (cases holding "personal involvement on the part of supervisory employees . . . cannot be established by the mere ignoring of prisoner complaints . . . . do not translate well in the context of an Eighth Amendment failure to protect claim where the letters alerting prison officials of an inmate's plight are directed to local prison officials who plainly are . . . positioned

to take steps to protect the prison inmate").  Indeed, to hold that a prison official is not personally involved in the failure to protect an inmate merely because the prisoner alerted him to the danger by <u>letter</u>, rather than in person, would make a meaningless distinction.

Finally, the reason courts are reluctant to hold prison officials liable for unanswered letters is to avoid "impos[ing] supervisory liability on individuals who had no authority over the situation," as prohibited by Section 1983.  <u>Johnson v. Wright</u>, 234 F. Supp. 2d at 363.  But plaintiff does not seek to hold Capra liable for his supervision of other officers.  According to the complaint, Capra <u>himself</u> was put on notice of the substantial risk plaintiff would be seriously harmed if plaintiff remained in Housing Block B, yet failed to protect plaintiff by failing to move him, something Capra—the prison warden—surely had the power to do.  Thus, plaintiff has alleged Capra was directly involved in the constitutional violation, not just involved as a supervisor.

Accordingly, the Court will not dismiss the claims against Superintendent Capra for failure to protect plaintiff from the September 17 assault.

        3.    <u>C.O. Boro</u>

Plaintiff has met the objective component with respect to C.O. Boro as well.  According to the complaint, Boro left plaintiff's cell door open and unattended while other inmates were free to enter and assault plaintiff with a razor.  Indeed, several inmates allegedly did so.  This is a sufficiently dangerous condition to support an Eighth Amendment claim.

Plaintiff has also met the subjective component with respect to Boro.  According to plaintiff, Boro admitted knowing it was a breach of protocol to leave plaintiff's cell open and unattended, yet intended to do so for between ten and fifteen minutes.  Plaintiff's allegation, that

Boro walked away smiling, further supports the inference that Boro created this allegedly dangerous situation intentionally, then failed to protect plaintiff from the danger by leaving.

Accordingly, the Court will not dismiss the claims against C.O. Boro for failure to protect plaintiff from the September 17 assault.

IV.     Plaintiff's Other Claims

Plaintiff's claims for constitutionally inadequate medical treatment and defamation both fail because plaintiff has not alleged the personal involvement of any defendant.  With respect to his medical claims, plaintiff does not allege any defendant was involved with the medical treatment following either assault, or indeed in what way his medical treatment was inadequate. With respect to defamation, plaintiff does not allege any defendant was among those who allegedly told the Housing Block B population any allegedly confidential information about plaintiff's 1996 arrest.

Accordingly, plaintiff's claims against all defendants for constitutionally inadequate medical treatment and defamation are dismissed.

V.      Qualified Immunity

Based on the foregoing, the Court finds plaintiff has alleged claims against all defendants for failure to protect him from assault on September 17, 2014.  Defendants nonetheless contend they are entitled to qualified immunity, and thus the claims against them must be dismissed.[6]

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v.

---

[6] Because defendants' motion is granted as to all other claims, the Court need not consider the applicability of qualified immunity to those claims.

Briggs, 475 U.S. 335, 341 (1986).  A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

Defendants' actions, as alleged, violated clearly established law.  On September 14-17, 2014, it was clearly established that prison officials had a duty "to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d at 620.  Moreover, without a fuller record, the Court cannot determine whether defendants were objectively reasonable in believing their actions were lawful.  For example, at this stage, the Court cannot determine whether defendants reasonably believed plaintiff was not actually in danger on September 17, 2014.  Therefore, qualified immunity is denied without prejudice to being reasserted at a later stage of the proceedings.

## CONCLUSION

Defendants' motion is DENIED as to the claim against all defendants for failure to protect plaintiff from the September 17, 2014, assault.

Defendants' motion is GRANTED as to all other claims.

The Clerk is directed to terminate the motion.  (Doc. #20).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is denied for the purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

Dated: August 4, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge