UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DEVIN C. BOTTOM,

                Plaintiff,

v.

WARDEN M. CAPRA; DEPUTY
SUPERINTENDENT OF SECURITY M.
ROYCE; SERGEANT R. MOSS;
CORRECTIONAL OFFICER C. JAMES; and
CORRECTIONAL OFFICER A. BORO,

                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

15 CV 4615 (VB)

Briccetti, J.:

Plaintiff Devin C. Bottom, proceeding in forma pauperis, alleges defendants Superintendent ("Supt.") Michael Capra, Deputy Supt. of Security Mark Royce, Sergeant ("Sgt.") Richard Moss, Correction Officer ("C.O.") Christopher James, and C.O. Arne Boro failed to protect him from being assaulted by fellow inmates while incarcerated at Sing Sing Correctional Facility, in violation of the Eighth Amendment.

Before the Court is defendants' motion for summary judgment. (Doc. #93).

For the reasons set forth below, defendants' motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

Defendants have submitted briefs, a statement of facts, and declarations with supporting exhibits, and plaintiff has submitted an opposition, an opposing statement of facts, and a declaration with supporting exhibits. Together, they reflect the following relevant background.

1

I.     September 14, 2014

On September 14, 2014, plaintiff was injured in a fight in the prison yard. Sgt. Moss interviewed plaintiff in the infirmary about the incident, and plaintiff received a misbehavior ticket in connection with the fight. Pending a disciplinary hearing, plaintiff was placed in keeplock—confined to his cell and isolated from the general prison population. Plaintiff alleges he asked to be transferred to a different housing block for his safety. Despite his alleged concerns, plaintiff signed a form refusing protective custody and was not transferred.

In keeplock, plaintiff alleges he wrote a one-and-a-half page letter to Supt. Capra about the officers' refusal to transfer plaintiff to a different housing block; he also alleges another inmate on his housing block mailed the letter. Supt. Capra and his administrative assistant claim no such letter was received.

II.    September 17, 2014

On September 17, 2014, plaintiff was injured in another fight as he left keeplock confinement to attend a disciplinary hearing for the fight three days earlier.

Plaintiff's housing block has a two-level locking mechanism. To open a cell door, an officer must manually unlock the cell door and disengage a secondary brake controlling about thirty-seven cells. When releasing a single inmate, an officer typically unlocks the individual's cell and then releases the secondary break, so the inmate can exit but the other cells remain manually locked.

At the same time plaintiff was preparing to leave for his hearing, C.O. Boro was also preparing eligible inmates for the morning commissary run. C.O. Boro unlocked these inmates' cells and then unlocked plaintiff's cell. C.O. Boro disengaged the secondary brake to allow plaintiff to exit his cell for the hearing. Although the secondary brake also opened the other cells

unlocked for morning commissary, those inmates were prohibited from leaving their cells until the morning commissary was called over the public announcement system. At that moment, unbeknownst to C.O. Boro, another officer announced morning commissary, and inmates exited their cells.

Plaintiff alleges that seconds later, two inmates ran into plaintiff's cell and assaulted him, and plaintiff chased them into the gallery where he fought with a third inmate. Other officers separated the inmates. Plaintiff sustained injuries, including a facial laceration and a broken clavicle.

III. Disciplinary Hearings and the Grievance Process

In the following weeks, plaintiff attended several disciplinary hearings and wrote several letters regarding the assaults and exploring his legal options.

On September 22, 2014, plaintiff attended the rescheduled disciplinary hearing for the September 14 assault. He pleaded guilty to all charges. The same day, plaintiff wrote letters to the New York State Office of the Inspector General and the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS")[1], complaining of the September 17 assault. (See Doc. #94-5 at 255).

On September 23 and October 6, 2014, plaintiff attended hearings for the September 17 assault.

On October 7, 2014, plaintiff wrote a letter to the clerk of the New York State Supreme Court in Manhattan for legal assistance in filing a lawsuit regarding the September 17 assault. In

---

[1] At his deposition, plaintiff testified he sent letters to the Inspector General's Office and "the Department of Commissions." (See Doc. #94-5 at 255). For the sake of clarity, the Court assumes plaintiff was referring to the state inspector general and the Commissioner of DOCCS, as the defense counsel who conducted the deposition did. (See Doc. #101 at ECF 7).

3

that letter, plaintiff said he would be undergoing surgery and that would prevent him from "exhausting his administrative remedies and filing [his] suit[] on time and proper." (Doc. #93-3 at 2–3).

On October 17, 2014, plaintiff filed a grievance regarding the September 17 assault. It was rejected as untimely because it was filed nine days after the expiration of the twenty-one day period in which grievances must be filed.

## DISCUSSION

I.   Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). The Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II. Exhaustion of Administrative Remedies

Defendants argue plaintiff failed to exhaust his administrative remedies regarding the September 17, 2014, assault, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and plaintiff's failure cannot be excused because the grievance process was available to him.

The Court agrees.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

For a New York state prisoner to exhaust his administrative remedies, he must comply with the three steps of New York's Inmate Grievance Program by (i) submitting a complaint to the clerk of the facility's Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged incident, (ii) appealing the IGRC's decision to the superintendent within seven days of the committee's response, and (iii) appealing to the Central Office Review Committee within seven days of the superintendent's response. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

A prisoner's duty to exhaust can be excused only when the administrative remedy is unavailable, or put differently, "officially on the books [but] . . . not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016). The Supreme Court highlighted three circumstances in which the administrative remedy is unavailable: when the remedy (i) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) is "so opaque that it becomes, practically speaking, incapable of use . . . [or] no ordinary prisoner can discern or navigate it"; or (iii) allows "prison administrators [to] thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Williams v. Correction Officer Priatno, 829 F.3d 118, 123–

6

24 (2d Cir. 2016) (quoting Ross v. Blake, 136 S. Ct. at 1859–60) (internal citations and quotation marks omitted). Drafting and sending written complaints to other agencies, such as the Inspector General's Office, demonstrates the grievance process is available. Kearney v. Gebo, 713 F. App'x 39, 42 (2d Cir. 2017) (summary order).

Plaintiff does not dispute he did not exhaust his administrative remedies—he admits he failed to file his grievance within the mandated twenty-one day period—but argues the grievance process was unavailable to him because he was confined to bed rest and heavily sedated. (See Doc. #109 at 3). The Court need not, however, determine whether plaintiff's alleged physical incapacity affected the availability of the grievance process, because it is undisputed plaintiff was capable of writing and sending a grievance.

Plaintiff concedes that in the weeks after the September 17 assault, he attended three disciplinary hearings and wrote several letters regarding the assault to outside agencies, such as the New York State Office of the Inspector General, the Commissioner of DOCCS, and the Clerk of the New York State Supreme Court in Manhattan. Those hearings appearances and plaintiff's written correspondence spanned nearly the entire twenty-one day grievance period, with plaintiff's first letters dated only five days after the assault and his last letter dated twenty days after the assault. Because plaintiff drafted and sent correspondence to other agencies during the grievance period—it is immaterial to which agencies exactly—plaintiff demonstrated he was capable of drafting and sending a grievance during this time period. Furthermore, plaintiff himself recognized the importance of exhausting administrative remedies, because in his October 7, 2014, letter to the Supreme Court Clerk, plaintiff expressed concern about "exhausting his administrative remedies and filing [his] suit[] on time and proper." (Doc. #93-3 at 2–3). The grievance process, therefore, was clearly available to plaintiff.

Accordingly, defendants are entitled to summary judgment on plaintiff's failure to protect claim.

**CONCLUSION**

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #93) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

Dated: November 19, 2018
      White Plains, NY

                        SO ORDERED:

                        _____
                        Vincent L. Briccetti
                        United States District Judge